1  Sandford L. Frey (State Bar No. 117058)
   Stuart I. Koenig (State Bar No. 102764)
2  **CREIM MACIAS KOENIG & FREY LLP**
   633 West Fifth Street, 51st Floor
3  Los Angeles, California 90071
   Telephone: (213) 614-1944
4  Facsimile: (213) 614-1961
   Sfrey@cmkllp.com
5  Skoenig@cmkllp.com

6  [Proposed] Reorganization Attorneys for
   Bay Area Financial Corporation,
7  Debtor and Debtor in Possession

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

11 In re                                  CASE NO:  2:13-bk-38974-TD

12 **BAY AREA FINANCIAL CORPORATION,**    Chapter 11

13     Debtor and Debtor in Possession.   **FIRST DAY EMERGENCY MOTION**
                                          **OF DEBTOR AND DEBTOR IN**
14                                         **POSSESSION FOR ORDER**
                                          **(1)APPROVING PAYOFF OF**
15                                         **PROMISSORY NOTE AT**
                                          **COMPROMISED AMOUNT; (2)**
16                                         **ESTABLISHING PROCEDURES FOR**
                                          **COMPROMISE AND SETTLEMENT OF**
17                                         **PROMISSORY NOTES IN THE**
                                          **ORDINARY COURSE OF BUSINESS;**
18
                                          **MEMORANDUM OF POINTS AND**
19                                         **AUTHORITIES; DECLARATIONS OF**
                                          **KENNETH J. PINGREE, JR. AND ELSA**
20                                         **RAIGOSA IN SUPPORTTHEREOF**

21                                         **Hearing Scheduled for**.
                                          DATE:  December 11, 2013
22                                         TIME:  10:00 a.m.
                                          CRTM:  1345
23                                                255 East Temple Street
                                                Los Angeles, CA  90012
24

25

26

27

28

                              1

I:\slf\20205 (Bay Area Fin)\Emergency Motion to Approve Compromise (12-9-13 slf V3).doc

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

**TO THE HONORABLE THOMAS B. DONOVAN, UNITED STATES BANKRUPTCY JUDGE:**

Bay Area Financial Corporation, the debtor and debtor-in-possession in the above-captioned case ("Debtor" or "Bay Area"), hereby moves this Court, on an emergency basis, for orders pursuant to 11 U.S.C. §105, Bankruptcy Rule 9019(a), and Federal Rule of Bankruptcy Procedure ("FRBP") 6003 (A) For approval of the compromise of a promissory note, and (B) Establishing Procedures for Debtor to enter into compromise agreements regarding certain promissory notes that are assets of this Bankruptcy Estate ("Motion"), and represents as follows:

The Debtor is a consumer finance company with offices in Southern California. The Debtor is primarily engaged in the business of lending money secured by real property. At the height of the real estate downturn in 2008, the Debtor ceased making loans and closed the San Francisco office. Thereafter, the Debtor continued to manage its portfolio of loans.

Earlier this year, the Debtor retained professionals to assist in consideration of its restructuring options. After thorough analysis, Bay Area concluded that it is in the best interest of creditors for it to start the process of an orderly liquidation of all loans and all real estate owned by it. Thereafter, Bay Area commenced and continues the process of an orderly liquidation of its remaining loans and real estate owned and acquired for the benefit of creditors. To that end, Bay Area was also well underway in its negotiations with creditors toward a consensual out-of-court workout, until the actions of one rogue creditor forced the Debtor to immediately file this case for the benefit of all creditors.

With respect to this Emergency Motion, Bay Area negotiated prior to the Petition Date, a compromise of one of its secured real estate loans as explained more fully below. The loan is secured by real property owned by the borrower. Escrow for the sale of that real property is set to close between December 13 and December 17, 2013. The sale of the real property collateral would result in the payment to the estate of approximately $678,554.51 (consisting of the full payment of principal in the amount of $650,000, plus $28,554.51 in interest). The $28,554.51 represents a negotiated reduction in the accrued interest of approximately 50%. However, the closing of the sale will avoid Bay Area incurring foreclosure costs, costs of maintaining the real estate owned ("REO"),

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

as well as payment of $275,000 in delinquent taxes. Delaying the sale from the currently scheduled closing date imposes a substantial risk with potentially adverse consequences to the estate.

By this Motion, the Debtor requests the approval of this Court for it to compromise the accrued interest for its outstanding loan discussed below so as to enable escrow to timely close, which compromise is consistent with Bay Area's pre-petition ordinary course business practices.

The Debtor also seeks approval of this Court for blanket authorization to compromise or settle other outstanding loans in accordance with a defined set of parameters set forth below, consistent with its prior ordinary course business practices, without the necessity of further Court authorization.

The Motion is based on this Motion, the attached Memorandum of Points and Authorities and exhibits hereto; the attached Declarations in support filed concurrently herewith; all pleadings, papers and records on file with this Court; and upon such other evidence, oral or documentary, as may be presented to this Court at or prior to the hearing on this Motion.

**WHEREFORE**, the Debtor respectfully prays that the Court grant its Motion and enter the proposed order on the Motion filed concurrently herewith, (a) For approval of a compromise of a promissory note, (b) Establishing Procedures for Debtor to enter into compromise or settlement agreements regarding certain promissory notes that are assets of this Bankruptcy Estate

DATED: December 10, 2013                    CREIM MACIAS KOENIG & FREY LLP


                                            By:  /s/ Sandford L. Frey
                                                 SANDFORD L. FREY
                                                 STUART I. KOENIG
                                                 [Proposed Reorganization Attorneys for Bay Area
                                                 Financial Corporation, Debtors and Debtors-In-
                                                 Possession

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BACKGROUND

**A. The Debtor.**

Bay Area filed its voluntary petition under Chapter 11 of the Bankruptcy Code on December 9, 2013. Bay Area began business in 1960 as a consumer finance company. The company made and collected loans through six offices in Southern California. In the late 1970's, Bay Area concentrated its lending on secured real estate loans. A loan origination office was opened in San Francisco to service Northern California. The primary source of new loan customers was typically referrals from commercial banks.

At the height of the real estate downturn in 2008, the Debtor ceased making loans and closed the San Francisco office. Thereafter, the Debtor continued to manage its portfolio of loans. Earlier this year, the Debtor retained professionals to assist in consideration of its restructuring options. After thorough analysis of Bay Area's financial situation (including its asset/debt structure) and weighing the various alternatives, Bay Area concluded that it is in the best interest of creditors for it to start the process of an orderly liquidation of all loans and all real estate owned by it. Thereafter, Bay Area commenced and continues the process of an orderly liquidation of its remaining loans and real estate owned and acquired for the benefit of creditors.

**B. The Primary Assets.**

Bay Area's primary assets consist of Loans made to Borrowers, Real Estate Owned by it as a result of foreclosure ("REO(s)"), and one investment real estate property.[1] Bay Area currently has three REO's and one investment property.

While Bay Area has commenced, and intends to continue, the process of orderly liquidation as expeditiously as reasonably possible, it projects that the liquidation will take between two to four years to complete (see plan discussion below).

---

[1] There are a few additional investments, having insignificant value.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1       Based on the most current information available and current valuations, Bay Area projects

2   that an orderly liquidation should result in approximately $16.1 million dollars net of expenses,

3   inclusive of projected expenses of the chapter 11 case (assuming that professional fees for the

4   chapter 11 case will be reasonably contained). Bay Area has used reasonable efforts to project its

5   liquidation analysis as accurately as possible. However, inasmuch as the primary assets are real

6   estate and loans, the valuations of such assets can be materially affected by many unknown and

7   unforeseen factors, such as real estate market conditions, financial capability of the borrowers,

8   foreclosure costs, timing of the liquidation, among other factors.

9       The foregoing projection is also net of ordinary course operating expenses throughout the

10  liquidation, such as rent, salary and other customary office expenses (excluding reasonable salary for

11  insiders). The office expenses are approximately $25,000 per month (excluding salary for insiders).

12      As of the Petition Date, Bay Area has approximately $1,377,799.50 of cash on hand. If the

13  transactions set forth in this Motion is approved by the Court, it will increase Bay Area's cash on

14  hand by an additional approximately $675,000.

15

16  **C.  The Claimants**

17

18      Bay Area has no direct secured creditors. However, inasmuch as most of Bay Area's loans are

19  secured by junior deeds of trust, the real estate serving as security for Bay Area's secured loans are

20  encumbered by senior secured creditors. In addition, Bay Area recently foreclosed on real property,

21  which is now included within its REO portfolio. This particular REO is secured by a senior deed of

22  trust in favor of Residential Credit Solutions in the approximate amount of $371,902.17 ("RCS

23  Loan"). Bay Area estimates the value of the REO to be approximately $850,000. Bay Area recently

24  brought current the RCS Loan and delinquent real estate taxes.

25      In addition, there are priority tax claims in the aggregate amount of approximately $141,000 in

26  connection with the one of the other REO's and the investment property.

27      Apart from those few claims mentioned above and ongoing operating expenses and costs to be

28  incurred in connection with administration and liquidation, the primary claims are unsecured and

    held by Bay Area's commercial paper account holders. There are approximately 175 distinct

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

5

1   commercial paper account claims held by approximately 150 commercial paper account holders.

2   The aggregate amount of the commercial paper account claims is approximately $20,537,264

3   (inclusive of interest through June 30, 2013).

4

5   **D.  The Out of Court Workout.**

6

7   Prior to the Petition Date, Bay Area commenced the process of an orderly liquidation.  For

    several months, Bay Area has been engaged in an effort to negotiate consensual out of court workout

8   plan with commercial paper account holders and several attorneys representing them.  To that end,

9   Bay Area has already formulated and circulated an initial draft of a proposed liquidation plan.  That

10  process has been largely successful and Bay Area has already solicited and received a number of

11  constructive comments from parties-in- interest, which are being incorporated into the proposed

12  plan.

13  In order to conserve expenses, Bay Area had hoped to avoid a chapter 11 filing entirely, or to at

14  least defer such filing long enough to get comments to the structure of the plan so that Bay Area was

15  reasonably confident before filing that the majority of commercial paper account holders would

16  support the plan after filing.  However, several factors necessitated the decision to file for chapter

17  11.

18

19  **E.  Reasons for the Chapter 11 Filing**.

20

21  This case concerns a relatively straight forward orderly liquidation, which as parties-in-interest

22  will soon discover appears unburdened by any material litigation or questionable insider

23  transactions.  Bay Area initially attempted to avoid filing chapter 11 out of concern for the potential

24  costs associated with chapter 11, which might significantly reduce the distribution to commercial

25  paper account holders (particularly if the case is permitted to spiral out of control by virtue of

26  completely unnecessary professional expenses).

27  However, Bay Area concluded that chapter 11 may inevitably be less costly than the burden

28  currently placed on Bay Area from having to respond to, and negotiate with, so many commercial

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1 paper account holders on an individual basis, particularly after weighing a number of other

2 impediments to the out-of-court process. Legal counsel retained by several commercial paper

3 account holders also appear to appreciate the impediments of an out-of-court resolution involving so

4 many claimants, as well as the benefits of a chapter 11 filing at this time.

5      Specifically, an overwhelming majority of the commercial paper account holders understandably

6 sought additional information respecting the assets and liabilities as well as an answer to the

7 important question of the anticipated distribution. Bay Area understands the desire and necessity of

8 providing more detailed financial information in order for commercial paper account holders to

9 properly evaluate what to expect from the liquidation. However, Bay Area did not feel it was

10 prudent to mail in mass, confidential financial information about the company to hundreds of people

11 (who are then unrestrained to share it with potentially hundreds more) without some degree of

12 control over the process. Similarly, it was not practical or economically feasible to contact each

13 commercial paper account holders, individually.

14      That said, it is Bay Area's desire to provide financial information and answers to legitimate

15 questions. After weighing the best and most efficient means to disseminate the backup information,

16 balancing the commercial paper account holders' need for such information against the necessity of

17 complying with disclosure laws, avoiding unintentionally misleading or inconsistent information

18 being distributed, and maintaining the need for some level of confidentiality, it was decided the

19 chapter 11 was the best and most efficient means of accomplishing and managing the dissemination

20 of information.

21      There are several immediate reasons for the decision to file a chapter 11. First, as stated, there is

22 the concern respecting disclosure of financial information without the procedural protection afforded

23 by the Bankruptcy Code. Second, there is the issue of soliciting votes for a plan and binding non-

24 consenting commercial paper account holders. Third, there is the practical issue of ensuring equal

25 treatment of commercial paper account holders.

26      Bay Area is aware of only one lawsuit filed against it, entitled *Candace Pingree vs. Bay Area*

27 *Financial*, now pending in the Los Angeles County Superior Court. Bay Area unequivocally

28 communicated its position that it was unwilling to permit any commercial paper account holder

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

(particularly one related to the principals) to receive priority treatment to the detriment of other commercial paper account holders who cooperatively participate in the out-of-court restructuring because to permit that to occur will impair confidence in management and the restructuring professionals, and the integrity of the entire out-of-court restructuring process. Despite Bay Area's clearly expressed position, the plaintiff in the pending *Pingree* action refused Bay Area's repeated requests to withdraw her noticed hearing set for December 10, 2013 seeking a writ of attachment. If the Plaintiff were to prevail, it would permit that single commercial paper account holder a potentially preferential advantage over all other commercial paper account holders, absent the chapter 11 filing. The December 10th hearing was the immediate triggering event.

The chapter 11 will now permit the dissemination of required financial and historical information and the solicitation of votes for the plan through a Court approved process controlled by the Bankruptcy Court and monitored by the Bankruptcy Court.

## F. The Chapter 11 case and plan.

As stated, a plan is already prepared and well along to completion. Bay Area currently anticipates proposing a chapter 11 plan substantially similar to the one recently circulated (incorporating those changes requested by interested parties during the restructuring negotiations as well as those reasonably requested during the case). Bay Area is already working on its disclosure statement, and anticipates filing its plan and disclosure statement within the next sixty days or so.

While it is true that some degree of delay will unfortunately result from the chapter 11 filing (including a likely delay in the initial projected distribution date of January 2014), Bay Area anticipates confirming its plan as expeditiously as reasonably possible for the benefit of commercial paper account holders, so as to commence distributions as soon as reasonably possible. The ability to accomplish that will be enhanced by the continued cooperation of the commercial paper account holders.

Bay Area anticipates a smooth and speedy chapter 11 case. As stated, the primary concern for this reorganization is making certain that professional fees and expenses are kept under control so as to avoid a diminution of the funds available for distribution to commercial paper account holders.

## II.

## THE COMPROMISE AGREEMENT

**A.    The Note.**

As stated, the Debtor is primarily engaged in the business of lending money secured by real property.  In January 2008 the Debtor entered into an agreement in the ordinary course of its business to loan up to $650,000 to Michael C. McCauley ("Borrower") secured by a second deed of trust on real property commonly know as 117 W. Channel Rd, Santa Monica, California and a third deed of trust on real property commonly known as 107 W. Channel Rd, Santa Monica, California (collectively referred to as the "Property").  Attached hereto and incorporated herein by reference as Exhibit "A" is a true and correct copy of the Optional Advance Note between the Debtor and Borrower ("Note").

The Note originally had a term of 6 months, with a variable interest rate.  Over the course of the succeeding three years, the Borrower entered into extension agreements with the Debtor extending the term of the Note in one year increments.  In August 2011, the Borrower refused to execute an extension agreement, but continued to make principal and interest reduction payments to the Borrower.  At that time, and up through the filing of the Motion, the Borrower had an outstanding balance of unpaid interest.

The Debtor was informed by the Borrower that the delinquent real property taxes against the Property was approximately $275,000.  On or about October 31, 2013, the Borrower advised the Debtor that he had entered into an agreement to sell the Property but that the sale proceeds would not be sufficient to pay off both the principal and interest due to the Debtor.  The Borrower further advised the Debtor that if the Debtor would accept a discount of 50% of the outstanding interest owing, $28,554.51, the sale of the Property would result in the payment of the principal amount, $650,000, in full plus $28,554.51 in interest.  The Borrower further advised the Debtor that the sale would close by no later than January 31, 2014.  Thereafter the Borrower advised the Debtor that if the payoff proposed was accepted, the sale could close by December 13, 2013.  Considering the risks of continuing with the Borrower in place and losing the proposed payoff, the Debtor agreed to

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1    reduce fifty percent of the accrued interest due.

2

3    **B.    The Compromise of the Note.**

4    Prior to the Petition Date, the Debtor agreed to accept a compromised amount as payment in

5    full for the principal and interest owing on the Note.    The decision of the Debtor to accept a

6    compromised amount for the Note, by agreeing to reduce the amount of the outstanding interest, was

7    done in the ordinary course of the Debtor's business.    However, because the Debtor filed for

8    Bankruptcy protection prior to the close of the sale transaction and the pay off of the Note, and in an

9    abundance of caution, the Debtor is seeking this Court's approval of the Debtor's agreement to

10    accept the compromised amount for the Note.

11    Subject to the approval of the Bankruptcy Court, the Debtor has agreed to accept a reduction

12    of $28,554.51 in accrued and unpaid interest on the Note.    Once the sale of the Property closes, the

13    Debtor will net approximately $678,659.51, plus interest of $147.38 for each day after December 16,

14    2013 the loan remains open.

15    The Debtor is informed and believes that the sale of the Property is not subject to any

16    contingencies.    The Debtor is further informed and believes that the sale of the Property is scheduled

17    to close on or before December 13, 2013, and therefore, the Debtor has sought emergency approval

18    of its agreement to compromise the Note.    Recognizing that the sale of the Property is set to close in

19    less than 21 days after the Petition Date, as explained in the Declaration of Elsa Raigosa submitted in

20    support hereof, if the sale does not close on or before December 13, 2013 the Debtor will suffer

21    irreparable harm in that, based on the marketing efforts of the Borrower broker, the Debtor is

22    informed and believes that the price the Borrower has negotiated for the sale of the Property is fair

23    and reasonable and that any subsequent sale will not necessarily yield a higher return to the Debtor,

24    when the continued risks of the Note remaining in place are factored in.    Therefore, the Debtor

25    requests a finding under Bankruptcy Rule 6003 that the Debtor will sustain irreparable harm if the

26    Motion is not granted.    Assuming the Motion is granted and the sale approved, it is anticipated that

27    the sale of the Note will close on or before December 13, 2013, with the sale proceeds deposited in

28    the debtor in possession account.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

## III.

## THE COMPROMISE AGREEMENT SHOULD BE APPROVED

### A.    Standard for Approving the Settlement.

The standard for approval of a settlement is set forth in Bankruptcy Rule 9019.  Bankruptcy Rule 9019 (a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Under Bankruptcy Rule 9019 (a), the Bankruptcy Court has "great latitude in approving compromise agreements" proposed by a debtor and may approve a proposed compromise so long as it is fair and equitable.  *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1987); *In re A&C Properties*, 784 F.2d1377,1381 (9th Cir 1986), *cert. denied,*479 U.S. 854, 107 S. Ct. 189 (1986).  The Ninth Circuit has set forth certain factors relevant to determining whether a settlement is fair and equitable:

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises.

See also, *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377 (9th Cir. 1986), cert. denied sub nom., *Martin v. Robinson*, 479 U.S. 854, 107 S. Ct. 189 (1986).  *Wells Fargo Bank, N.A. v Guy F. Atkinson Company of California (In re Atkinson)*, 242 B.R. 497, 502 (B.A.P. 9th Cir 1999) ("At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate.").

The Court need not conduct an exhaustive investigation or a mini-trial on the merits of the claims that the trustee seeks to compromise. See, <u>*Walsh Construction, Inc.*</u> 669 F.2d 1325, 1328 (9th Cir. 1982).    In fact, the Court need not decide the questions of law and fact raised in the controversies sought to be settled, and need not determine whether the settlement presented is the best one that could possibly have been achieved.  Instead, the Court's responsibility is only to "canvass the issues to see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir 1983), *cert. denied,* 464 U.S. 822

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1   (1984) (citation omitted).

2         The Debtor has the right to exercise its reasonable business judgment in an effort to

3   maximize value for the creditors of this Estate.   The Debtor also believes that its decision to

4   compromise the amount of the pay off of the Note was done within the ordinary course of its

5   business, and was entered into by the Debtor prior to the Petition Date, in the ordinary course.   The

6   Debtor believes that this compromise is well above the lowest point in the range of reasonable

7   compromises, and therefore the Court should authorize the Debtor to proceed with the compromise

8   agreement.   In light of the facts and circumstances set forth above, application of the *A&C*

9   *Properties* factors shows that the compromise explained herein is fair and equitable, is in the best

10  interests of the creditors of this Estate, an is well above the lowest point in the range of

11  reasonableness.

12

13  **B.**     **Probability of Success.**

14        The question of probability of success addressed in the Motion is not a typical one of whether

15  or not the Debtor will be successful in litigation, but rather whether or not the Debtor will receive the

16  full amount owing if the Borrower is prevented from going forward with his proposed sale and is

17  required to put the Property back on the market.   As discussed above, the Debtor is informed and

18  believes that the Borrower listed the Property for sale with Marcus and Milichap, and nationally

19  recognized real estate broker.   The Debtor is further informed and believes that the Property was

20  marketed for 2-3 months before the Borrower entered into the agreement to sell.   The Debtor

21  believes that the sale price the Borrower negotiated is fair and reasonable and that the compromised

22  amount the Debtor has agreed to accept is the best result possible for the creditors of this Estate as it

23  will result in an immediate payment to the Estate of approximately $679,000 and will eliminate any

24  further risk associated with the Property.

25

26  **C.**     **Difficulty of Collection.**

27       If the compromise is approved the sale of the Note will result in sufficient proceeds to pay

28  off the principal amount of the Note, plus 50% of the outstanding interest.   The sale proceeds will be

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1    paid through an escrow and therefore the Debtor does not believe there will be any difficulty in

2    collection.

3

4    **D.      Complexity of Litigation; Attendant Expense, Inconvenience and Delay.**

5          At the time the compromise was entered into the Borrower was delinquent in its interest

6    obligation to the Debtor in the approximate amount of $57,100. In addition, there is approximately

7    $275,000 in delinquent property tax owed by the Borrower. By approving the compromise the

8    Debtor will receive an immediate payment of over $678,000. Without the compromise there will no

9    doubt be a delay in the payment of the principal amount of the Note, in addition to the interest due.

10   Given the Borrowers past history, the Debtor cannot predict how long that delay will be, but it

11   certainly will inconvenience the creditors of this Estate.

12

13   **E.      Interests of Creditors.**

14         The Ninth Circuit has established that "the paramount interest of the creditors" is vital to

15   evaluating the fairness of a settlement. Under the terms of the compromise, the Estate receives an

16   immediate benefit, the receipt of cash, in the full principal amount of the Note plus 50% of the past

17   due interest. The sale of the real property collateral would result in the payment to the estate of

18   approximately $678,554.51 (consisting of the full payment of principal in the amount of $650,000,

19   plus $28,554.51 in interest). The $28,554.51 represents a negotiated reduction in the accrued

20   interest of approximately 50%. However, the closing of the sale will also avoid Bay Area incurring

21   foreclosure costs, costs of maintaining the REO as well as burden of approximately $275,000 in

22   delinquent property taxes incurred by the Borrower.

23         Delaying the sale from the currently scheduled closing date imposes a substantial risk with

24   potentially adverse consequences to the Estate. For these reasons, the Debtor believes the

25   compromise is in the best interests of the creditors of this Estate and should be approved by this

26   Court.

27

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

**F.    Alternatively, the Court Should Approve the Compromise Pursuant to 11 U.S.C.§363.**

Bankruptcy Code § 363(b)(1) provides that a trustee, after noticing a hearing, may use, sell or lease other than in the ordinary course of business, property of the estate. If the trustee proposes to sell, use or lease property out of the ordinary course of business, Bankruptcy Court approval is required.

Although it is the position of the Debtor that this compromise of the Note is in the ordinary course of its business, out of an abundance of caution the Debtor is requesting that this Court approve the compromise also under Bankruptcy Code § 363(b)(1) in the event that the compromise is considered to be the use of property of this Estate, requiring approval.

The standard to be applied in determining whether the sale or use of estate property should be authorized under Section 363(b)(1) is whether such sale is in the best interests of the Estate and the price is fair and reasonable. *See, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1995). A trustee or debtor is given substantial discretion in this regard. Id. Further, the Court has broad discretion with respect to matters under Section 353(b). *See, Big Chanty Land Corp. v. Comer Property, Inc.*, 61 B.R., 262, 268, (Bankr. N.D. Ga. 1985). Meeting the standard is dependent, in part, upon the purposes of such sale. As explained above, and supported by the Declaration of Ms. Raigosa, the compromise is in the best interests of the creditors of this Estate and therefore should be approved by this Court.

## IIV

## THE COURT HAS THE AUTHORITY TO ESTABLISH PROCEDURES PURSUANT TO

## WHICH THE DEBTOR CAN COMPROMISE LOANS

The Debtor is also requesting blanket authority to compromise or settle other outstanding loans in accordance with a defined set of parameters set forth below, consistent with its prior ordinary course business practices, without the necessity of further Court authorization. Although the Debtor believes that these compromises are customary and in the ordinary course of its business, the Debtor is nevertheless seeking authorization. However, it will be time consuming, impractical

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

14

and expensive for the Estate for the Debtor to be required to obtain Court approval for each and every compromise of a loan made in the ordinary course of its business. Therefore, the Debtor seeks authority to do so without further Court approval within certain parameters.

## A.    The Debtor's Ordinary Course of Business.

As explained above, the Debtor is consumer finance company. In that regard, the Debtor has made Loans secured by real property, a number of which were outstanding as of the Petition Date. Prior to the bankruptcy filing, it was in the ordinary course of the Debtor's business practice to compromise the payoff of its outstanding loans when the economics of the transaction dictated the necessity to do so. A compromise or discounted amount would be appropriate in those circumstances where the value of the collateral declined after the loan was made or the economic condition of the borrower had declined. It was the Debtor's practice to review each loan independently and to make a determination whether or not a discount or compromise was required based on the circumstances of the borrower. In those instances where a determination was made that a discounted pay-off, or compromise amount was supported by the facts and circumstances of the loan, the Debtor would, on average, agree to a discount of not more than 20% of the principal amount of the total amount due. In those instances where the borrower requested a reduction in the interest rate or an extension of the loan, it was the Debtor's ordinary course of practice to reduce the interest rate by not more than 4% or agree to a forbearance agreement from foreclosure of not longer than 18 months, but only after an extensive analysis of the borrower and the collateral securing the loan..

## B.    Relief Requested.

In an effort to minimize additional fees and costs to this Estate and to avoid unnecessarily taking up the Court's time, the Debtor requests that the Court enter an order adopting the procedures set forth below, to be implemented with respect to the compromise or settle the Loans without further order of this Court so as to: (a) promote and facilitate a resolution of troubled Loans; and (b) streamline the process for compromise of any troubled Loans in an expeditious manner.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

The Debtor shall have the authority under Bankruptcy Rule 9019(b) to compromise and settle those Loans that meet the criteria set forth below, in its sole discretion, without further notice to and without further approval from the Bankruptcy Court or from any creditors committee, should one be appointed:

1.   For those loans where the borrower is seeking a reduction in the outstanding payoff amount, a reduction of the loan amount by no more than 20% including principal and interest.

2.   For those loans that are to remain in place, and the borrower cannot make the payments required under the terms of the loan agreement, a reduction in the interest rate of not more than 4% .

3.   For the those loans that are due and the term has expired, the right to enter into a forbearance agreement pursuant to which the Debtor agrees not to commence foreclosure proceedings against the borrower for a period not to exceed 18 months, so long as the borrower agrees to continue to make the interest and principal payments required under the terms of the loan.

With respect to any compromise or settlement of Loans outside of the terms set forth above, the Debtor shall seek Bankruptcy Court approval under Bankruptcy Rule 9019(a).

Bankruptcy Rule 9019(b) expressly contemplates that a debtor may obtain authorization to settle various types of claims against the estate without seeking court approval for each specific settlement.   Bankruptcy Rule 9019(b) provides as follows:

(b) *Authority to compromise or settle controversies within classes.*  After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

The Debtor believes that the relief requested will allow the Debtor to resolve smaller Loan disputes or those instances where the reduction or compromise requested by the borrower is not consequential and the resolution will allow the Debtor to quickly monetize the Loan for the benefit of creditors, without the administrative delay of seeking the Court's involvement in what would

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1    otherwise be in the ordinary course of the Debtor's business operations.

2        Giving the Debtor the authority to conduct analysis of the Loan and affording the Debtor the

3    discretion to resolve certain Loans without further notice or hearing will expedite the settlement

4    process, minimize legal fees and will not prejudice any party in interest.

5

6    <div align="center">**V**</div>

7    <div align="center">**CONCLUSION**</div>

8        Wherefore, the Debtor respectfully requests that this Court enter an Order: (a) approving a

9    compromise of the promissory note of Michael C. McCauley; (b) Establishing Procedures for Debtor

10   to enter into compromise or settlement agreements regarding certain promissory notes that are assets

11   of this Bankruptcy Estate

12   DATED: December 10, 2013            CREIM MACIAS KOENIG & FREY LLP

13

14                                      By: /s/ Sandford L. Frey
                                             SANDFORD L. FREY
15                                           STUART I. KOENIG
16                                       [Proposed] Atorneys for Debtor and Debtor in
                                         Possession Bay Area Financial Corporation
17

18

19

20

21

22

23

24

25

26

27

28

<div align="left" style="writing-mode: vertical">CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944</div>

## DECLARATION OF ELSA RAIGOSA

I, ELSA RAIGOSA, declare as follows:

1.      I am the Loan Manager of Debtor and Debtor in Possession Bay Area Financial Corporation ("Debtor"). I submit this declaration in support of the Debtors' Motion for an Order (a) approving a compromise of the promissory note of Michael C. McCauley; (b) Establishing Procedures for Debtor to enter into compromise or settlement agreements regarding certain promissory notes that are assets of this Bankruptcy Estate. If called to testify, I could and would testify competently concerning the contents of this Declaration. My knowledge of the facts set forth herein is based on my personal knowledge and my review of the company's books and records and my discussions with employees of the Debtor.

2.      As the loan manager for the Debtor, I am the contact person for all the Debtor's borrowers, including Mr. McCauley. The original loan agreement was entered into with Mr. McCauley in January of 2008 and provided for a variable rate loan of up to $650,000 for a 6 month term. Attached hereto and incorporated herein by reference as Exhibit "A" is a true and correct copy of the Optional Advance Note ("Note") with Mr. McCauley.

3.      The Note is secured by a second deed of trust on real property commonly know as 117 W. Channel Rd, Santa Monica, California and a third deed of trust on real property commonly known as 107 W. Channel Rd, Santa Monica, California (collectively referred to as the "Property"). I am advised and informed that the Property is zoned mixed use and is currently being used for both commercial and residential purposes.

4.      Within the first 3 months of the issuance of the Note Mr. McCauley drew down the full amount of the credit available under the Note, $650,000. When the Note came due in or around July 2008 Mr. McCauley requested and was granted a three month extension of the Note. Over the course of the succeeding two years Mr. McCauley executed extension agreements with the Debtor extending the term of the Note in one year increments.

5.      In August 2011, Mr. McCauley was unable to pay off the loan amount and refused to execute an extension agreement, despite being offered the right to do so. At that time Mr. McCauley was past due on the interest payments due to the Debtor and we were advised that he was not able to

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1  bring the Debtor current. Thereafter Mr. McCauley continued to make interest payments to the

2  Debtor but was not able to reduce the past due interest owing.

3       6.     During October 2013, I was advised by Mr. McCauley of his intent to pay-off his

4  loan to Bay Area. On or about October 31, 2013, the Borrower informed us that he had entered into

5  an agreement to sell the Property but that the sale proceeds would not be sufficient to pay off both

6  the principal and interest due under the terms of the Note.[2] The Borrower further advised me that if

7  the Debtor would accept a discount of 50% of the outstanding interest owing, $28,554.51, the sale of

8  the Property could go forward and the Debtor would receive a payment of the principal amount,

9  $650,000, plus half of the past due interest, $28,554.51. Mr. McCauley further advised me that the

10  sale would close by no later than January 31, 2014. Sometime thereafter I was informed by Mr.

11  McCauley that if the Debtor agreed to accept $28,554.51 plus the principal amount of $650,000 as

12  full payment under the obligations under the Note, the sale could close by December 13, 2013.

13       7. I presented the proposal of Mr. McCauley to Kenneth J. Pingree, Jr., the president of the

14  Debtor for his consideration. This was the ordinary course of business I followed when presented

15  with a request to compromise a loan or note by one of the Debtor's borrowers. Thereafter I was

16  advised that the proposal of compromise from Mr. McCauley had been accepted by the Debtor. As

17  was my custom and practice, I then informed Mr. McCauley that his offer of compromise had been

18  accepted by the Debtor.

19       8.     I am advised and informed that the Debtor filed for bankruptcy protection on

20  December 9, 2013. The agreement to compromise the Note was entered into prior to the filing of the

21  Bankruptcy Petition, and based on my experience as the loan manager for the Debtor, the

22  compromise was entered into in the ordinary course of the Debtor's business. The closing will not

23  only bring a substantial amount of money into the estate, but avoid the burden on the Estate of

24  ///

25  ///

26  ///

27  _____

28  [2] Borrower requested a waiver of all accrued interest. The Debtor and the Borrower agreed for the Debtor to give a credit of the accrued interest.

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

1    having to pay $275,000 of delinquent property tax incurred by the Borrower in the event of

2    foreclosure by the Debtor.

3        I declare under penalty of perjury under the laws of the United States of America that the

4    foregoing is true and correct, and that this declaration was executed on December 10, 2013, in Los

5    Angeles, California.

6                                    ELSA RAIGOSA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

20

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

## DECLARATION OF KENNETH J. PINGREE, JR.

I, KENNETH J. PINGREE, JR., declare as follows:

1.      I am the President of Debtor and Debtor in Possession Bay Area Financial Corporation ("Debtor"). I submit this declaration in support of the Debtors' Motion for an Order (a) approving a compromise of the promissory note of Michael C. McCauley; (b) Establishing Procedures for Debtor to enter into compromise or settlement agreements regarding certain promissory notes that are assets of this Bankruptcy Estate. If called to testify, I could and would testify competently concerning the contents of this Declaration. My knowledge of the facts set forth herein is based on my personal knowledge and my review of the company's books and records and my discussions with employees of the Debtor.

2.      Bay Area is a consumer finance company. I have employed by Bay Area since the early 1970's and its President since 1991. The Debtor made and collected loans through six offices in Southern California. In the late 1970's, Bay Area concentrated its lending on secured real estate loans and continued that practice up through the filing of the bankruptcy petition.

3.      Based on my position as the president of the Debtor I have personal knowledge of the business practices of the Debtor, including but not limited to the practices related to the compromise and settlement of its loans.

4.      It has been the practice of the Debtor to agree to a compromise on an outstanding loan or note in those instances where the financial condition of the borrower or the value of the collateral securing the loan has changed since the loan was originated. In those instances where there is a problem with one of our loans, the standard procedure that we follow is to have the loan manager or loan officer responsible for the loan to present me with all of the information regarding the loan and the reason why the compromise, discount or settlement is being requested. Some of the factors I take into consideration in determining whether to compromise a loan include a decrease in the value of the collateral securing the loan, or the borrowers' financial situation has changed since the loan was originated. In those instances, it was part of the operating procedure of the Debtor to agree to a discount of not more than 20% of the principal amount of the total amount due. In those instances

where the borrower requested a reduction in the interest rate or an extension of the loan, it was tour

ordinary course of practice to reduce the interest rate by not more than 4% or agree to a forbearance

agreement from foreclosure of not longer than 18 months, but only after an extensive analysis of the

borrower and the collateral securing the loan.

5.    Consistent with the Debtor's ordinary course of dealing, and in an effort to limit both

the costs to this Estate and to avoid taking up this Court's time with the ordinary procedures of the

Debtor, the Debtor requests the following authority from this Court:

The Debtor shall have the authority under Bankruptcy Rule 9019(b) to compromise and

settle those Loans that meet the criteria set forth below, in its sole discretion, without further notice

to and without further approval from the Bankruptcy Court or from any creditors committee, should

one be appointed:

a.    For those loans where the borrower is seeking a reduction in the outstanding

payoff amount, a reduction of the loan amount by no more than 20% including principal and interest.

b.    For those loans that are to remain in place, and the borrower cannot make the

payments required under the terms of the loan agreement, a reduction in the interest rate of not more

than 4%.

c.    For the those loans that are due and the term has expired, the right to enter

into a forbearance agreement pursuant to which the Debtor agrees not to commence foreclosure

proceedings against the borrower for a period not to exceed 18 months, so long as the borrower

agrees to continue to make the interest and principal payments required under the terms of the loan.

6.    With respect to any compromise or settlement of Loan outside of the terms set forth

above, the Debtor shall seek Bankruptcy Court approval under Bankruptcy Rule 9019(a).

7.    As of the execution of this declaration, the Debtor had 18 outstanding loans with an

unpaid balance of $7,265,365.79.  Attached hereto and incorporated herein by reference as Exhibit

"B" to my declaration is statement setting forth the open loans as of December 6, 2013.

8.    Based on my over 40 years experience with the Debtor, it is my opinion that the

procedures requested herein are in the best interests of the creditors of this Estate and will not

prejudice any third parties or creditors.

1

2          I declare under penalty of perjury under the laws of the United States of America that the

3    foregoing is true and correct, and that this declaration was executed on December 10, 2013 in Los

4    Angeles, California.

5

6                                                        KENNETH J. PINGREE, JR.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CREIM MACIAS KOENIG & FREY LLP
633 WEST FIFTH STREET, 51ST FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 614-1944

23

**EXHIBIT "A"**

O P T I O N A L     A D V A N C E     N O T E

"This is a Variable Rate Loan - Balloon Payment"

$650,000.00 Plus interest

Los Angeles, California
January 17 2008

    FOR VALUE RECEIVED, the undersigned hereby promises to pay to **Bay Area Financial Corporation, a California Corporation, CFL License No. 603-1881, 12400 Wilshire Blvd., Suite 230, Los Angeles, CA 90025-1021** the principal sum of **$650,000.00**, or so much thereof as shall at any time be advanced by the Lender, plus interest on the unpaid principal balance as provided below. All or any part of the principal on this note may be borrowed, repaid and re-borrowed from time to time prior to maturity. Loans hereunder may be made upon the oral or written request of any person authorized in the resolution on file with Bay Area Financial Corporation.

    This is a variable interest rate note and the interest rate may increase or decrease depending upon subsequent changes in the prime rate of interest. The "prime rate of interest" is the prime rate announced as being charged by Wells Fargo Bank, from time to time. Should at any time, Wells Fargo Bank cease announcing a prime rate of interest then "prime rate of interest" under this note shall mean whatever reference rate Wells Fargo Bank does announce as being a substitute for its prime rate of interest. Interest on this note shall be computed on the basis of a 365 day year for actual days elapsed.

    This is a variable interest rate loan and the interest rate will increase or decrease with changes in the prime loan rate. This interest rate will be 5.00 percentage points above the prime loan rate. The initial prime loan rate is 7.25% which is the published rate as of **January  17, 2008**; therefore, the initial interest rate is **12.25%** per year. As the prime rate of interest increases or decreases, the rate of interest hereunder shall correspondingly increase or decrease so that the interest rate shall at all times be equal to 5.00 percentage points higher than the prime rate on a daily basis.

    Interest will be payable in monthly installments which installments are due on the ___ day of each month commencing **February __, 2008**, and continuing thereafter until **July __, 2009** when this note shall be paid in full. Principal shall be payable in full on **July __, 2009** ("the final maturity date"), together with

Loan No. 23708.08

(1) all accrued and unpaid interest and (2) all sums which are owed to Bay Area Financial Corporation under the terms of this note including but not limited to late charges, costs of any kind or nature, and/or advancements of any kind or nature made by Bay Area Financial Corporation for the protection of the liens on the real property which is security for this note.

This note is secured by one (1) deed of trust on the properties located at 107, 107 ½ , 109, 109 ½ W. Channel Rd., Santa Monica, CA 90402 and 117 W. Channel Road, Santa Monica, CA 90402 and an Assignment of Rents, of even date herewith to JOB INSURANCE AGENCY, a California corporation, as Trustee, and reference is made to such Deeds of Trust for rights to acceleration of the indebtedness evidenced by this note, including the following paragraph:

> "If the Trustor shall sell, convey or
> alienate the property herein described, or any
> interest therein, or shall be divested of his
> title or any interest therein in any manner or
> way, whether voluntarily or involuntarily, without
> the written consent of the Beneficiary being first
> had and obtained, the Beneficiary shall have the
> right at its option to declare any indebtedness or
> obligations secured hereby, irrespective of the
> maturity date specified in any note evidencing
> the same, immediately due and payable."

In the event of failure to pay principal or interest under this note when due, or in the event of default under any agreement between the undersigned and Bay Area Financial Corporation may, at its election and without notice to undersigned, declare the entire unpaid balance hereof together with all accrued interest immediately due and payable.

Payments on this note shall be credited first to interest then due and the remainder to principal. If this note is not paid when due, the undersigned promises to pay all costs of collection and reasonable attorneys' fees incurred by Bank whether or not suit is filed hereon.

If any installment of principal or interest hereunder is not paid when due, the holder shall have the following rights in addition to the rights set forth in the preceding paragraph: (a) the right to add unpaid interest to principal and to have such amount thereafter bear interest as provided in this note, and (b) if any installment is more than ten (10) days past due, the right to collect a charge of six percent (6 %) of the delinquent payment

Loan No. 23708.08                    2

or fifteen dollars ($15.00) whichever is greater. This charge is the result of a reasonable endeavor by the undersigned and the holder to estimate the holder's added costs and damages resulting from the undersigned's failure to timely make payments under this note, hence the undersigned agrees that the charge shall be presumed to be the amount of damage sustained by the holder since it is extremely difficult to determine the actual amount necessary to reimburse the holder for such damages. If this note is not paid when due, the undersigned further promises to pay all costs of collection, foreclosure fees and reasonable attorneys' fees incurred by the holder whether or not suit is filed hereon.

In the event of a default under this note, including but not limited to: nonpayment of any installment of principal or interest within ten (10) days of its designated due date; failure to pay insurance premiums or property taxes; transfer of title, the remaining principal balance shall bear interest at a rate of interest which shall be eight percent (8.0%) higher than the aforementioned prime rate of interest until this note has been paid in full.

No transfer of an interest by the beneficiary in this Note shall be effective unless notice of such transfer, including the name and address of the transferee, has been provided to you. If such transferee does not provide you with satisfactory evidence that it is not a foreign corporation or nonresident alien, you shall have the right to withhold tax from the payments due to such transferee as required under the Internal Revenue Code or applicable state law, and the withholding of such interest shall not constitute a default under this Note or the Deeds of Trust securing the same. Notwithstanding the foregoing, nothing in this note shall prohibit the collateral assignment of this note to Wells Fargo Bank as security for any and all obligations of Bay Area Financial Corporation.

This note is secured by one (1) deed of trust on the real properties more commonly known as 107, 107 ½ , 109, 109 ½ W. **Channel Rd., Santa Monica, CA 90402 and 117 W. Channel Road, Santa Monica, CA 90402** and an Assignment of Rents naming Job Insurance Agency, a California Corporation as Trustee.

The undersigned may prepay all or any part of this note at any time without penalty or premium whatsoever by paying the balance owing plus all accrued and unpaid interest thereon.

Presentment of payment, notice of dishonor, protest, and notice of protest are expressly waived. No delay or omission by Bank to exercise any right hereunder, whether before or after the

Loan No. 23708.08                   3

happening of any event of default, shall impair any such right or shall be construed as a waiver thereof or of any such event of default. This note cannot be changed, modified, amended or terminated orally.

Dated: January 17, 2008

WITNESS

_____

BORROWER(S):

_____
MICHAEL C. MCCAULEY

Loan No. 23454.05                  4

SOUTHLAND TITLE

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO
Bay Area Financial Corporation
CFL License No. 603-1881
12400 Wilshire Blvd., Ste. 230
Los Angeles, CA 90025

01/22/08

**20080113061**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST AND ASSIGNMENT OF RENTS AND
## REQUEST FOR SPECIAL NOTICE
*This Document Provided by Commonwealth Land Title Company*

This Deed of Trust, made this 17th day of January , 2008                    ,between **MICHAEL C. MCCAULEY, A**

**SINGLE MAN** , here in called Trustor, whose address is P.O. Box 6348, Malibu, CA  90264,  and Bay Area Financial

Corporation, a California Corporation, herein called **Beneficiary**, whose address is 12400 Wilshire Blvd., Ste. 230, Los Angeles,

CA  90025 and JOB INSURANCE AGENCY, A California corporation, herein called **Trustee**,

**Witnesseth: THAT TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH
POWER OF SALE,** that property in Los Angeles County, California, described as:

See Exhibit "A" attached hereto and by this reference, incorporated herein.
Additionally this deed of trust is subject to the terms and conditions as set forth in "Rider No. 1" which is attached hereto
and made a part hereof.

*See Rider No. 1 attached*

TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and
conferred upon Beneficiary by paragraph (11) of the provisions set forth below to collect and apply such rents, issues and profits.
**For the Purpose of Securing: 1.** Performance of each agreement of Trustor incorporated by reference or contained
herein. 2. Payment of the indebtedness evidence by one promissory note of even date herewith, and any extension of renewal
thereof, in the principal sum of **$650,000.00** executed by Trustor in favor of Beneficiary or order.  3.  Payment of such further
sums as the then record owner of such property hereafter may borrow from Beneficiary, when evidenced by another note (or
notes) reciting it is so secured.

To Protect the Security of This Deed of Trust, Trustor Agrees:
  (1)  That Trustor will observe and perform said provisions; and that the referenced to property, obligations, and parties in
said provisions shall be construed to refer to the property, obligations and parties set forth in this Deed of Trust.
  (2)  To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or
restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon
and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said
property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit,
suffer or permit any act upon said property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts
which from the character or use of said property may be reasonably necessary, the specific enumeration's herein not excluding
the general.
  (3)  To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary.  The
amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured herein
and in such order as beneficiary may determined or at option of Beneficiary the entire amount so collected or any part hereof may
be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereinunder or
invalidate any act done pursuant to such notice.
  (4)  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the
Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable

sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to record this Deed.

(5)  To pay; at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or a part thereof, which appear to be prior to superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(6)  To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(7)  That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8)  That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(9)  That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may; reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(10) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property held hereunder. The recitals in such RECONVEYANCE of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may described as "The person or persons legally entitled thereto". Five years after issuance of such full RECONVEYANCE, Trustee may destroy said Note and this Deed (unless directed in such request to retain them).

(11) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving until Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collected and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonably attorney's fees, upon indebtedness secured hereby, and in such order as Beneficiary may determined. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(12) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall post it with Trustee this Deed said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required y law, Trustee without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determined, a public auction to the highest bidder for cash in lawful money of the United States, payable a the time of sale. Trustee may postpone sale of all or a portion of said property by public announcement of such time and place of sale, and from time to time thereafter may postpone sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any convenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

(13) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in wiring, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the County or Counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(14) That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder,

4

including pledges of the note secured hereby whether or not named as Beneficiary herein.  In this Deed, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(15) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor request that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

In accordance with Section 2924b, Civil Code, request is hereby made by the undersigned TRUSTOR that a copy of any Notice of Default and a copy of any Notice of Sale under Deed of trust recorded on June 13, 2006, Instrument No. 06-1295260, in Book N/A, Page N/A, of Official Records in the Office of the County Recorder of Los Angeles as affecting above described property, executed by Michael C. McCauley, a single man, as Trustor in which is named East West Investment Inc., a California Corporation, as Trustee, in which is named East West Bank, a Banking Corporation, as Beneficiary be mailed to Bay Area Financial Corporation , a California Corporation whose address is 12400 Wilshire Blvd., Ste. 230, Los Angeles, CA 90025.

NOTICE:  A copy of any Notice of Default and of any Notice of Sale will be sent to the address contained in this record request. if you address changes, a new request must be recorded.

Dated:  January 11, 2008

_____          _____
Michael C. McCauley

_____          _____

STATE OF CALIFORNIA
COUNTY OF   Los Angeles              )ss.
On   1-13-08 1-17-08 Kw            KiM WiZer                            (insert name) Notary Public,
personally appeared   Michael C. McCauley                            who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY AND PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

KIM WIZER
Commission # 1746556
Notary Public - California
Los Angeles County
My Comm. Expires Jun 19, 2011

EXHIBIT "A"

Legal Description

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 165 OF TRACT NO. 1719, IN THE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 21 PAGES 162
AND 163 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT 166 OF TRACT NO. 1719, IN THE CITY OF LOS ANGELES, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 21 PAGES 162
AND 163 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THAT PART LYING NORTHWESTERLY OF LINE PARALLEL WITH AND
DISTANT 10 FEET SOUTHEASTERLY MEASURED AT RIGHT ANGLES FROM THE
NORTHWESTERLY LINE OF SAID LOT AND THE SOUTHWESTERLY
PROLONGATION OF SAID NORTHWESTERLY LINE.

MORE COMMONLY KNOWN AS: 107, 107 ½ , 109, 109 ½ W. Channel Rd.,
Santa Monica, CA  90402 and 117 W. Channel Road, Santa Monica, CA
90402.

R I D E R    N O .   1

Rider to Deed of Trust,
Assignment of Rents,
dated January 17, 2008
between
MICHAEL C. MCCAULEY, Trustor ("Trustor")
and Job Insurance Agency, Trustee ("Trustee")
and Bay Area Financial Corporation as Beneficiary ("Beneficiary")

Notwithstanding any terms or conditions to the contrary contained in the Deed of Trust, Trustor agrees;

1.   To pay any and all costs and expenses, including attorney's fees, incurred by Beneficiary to enforce its rights hereunder, whether or not suit is brought thereon;

2.   To pay interest on each sum expended by Beneficiary or Trustee in enforcing the obligations secured hereby from the date of expenditure until the date of repayment at the rate of interest in effect from time to time during such period under the promissory note secured hereby;

3.   If the Trustor shall sell, convey or alienate the property herein described, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the Beneficiary being first had and obtained, the Beneficiary shall have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable;

4.   If any provision contained herein is held to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force and effect.

BORROWER(S):                                    WITNESS:

_____                         _____
MICHAEL C. MCCAULEY

Loan No. 23708.08

 

This page is part of your document - DO NOT DISCARD

 **20080113061**   Pages: 006

|||||||||||||||||||||||||||||||||||||||

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/22/08 AT 08:00AM

Fee:  34.00
Tax:  0.00
Other: 0.00
Total: 34.00

Title Company

**TITLE(S) :**

  

L E A D   S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.     Number of AIN's Shown

 THIS FORM IS NOT TO BE DUPLICATED 

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

633 W. Fifth Street, 51ˢᵗ Floor, Los Angeles, CA  90071

A true and correct copy of the foregoing document entitled (specify): ***FIRST DAY EMERGENCY MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR ORDER (1)APPROVING PAYOFF OF PROMISSORY NOTE AT COMPROMISED AMOUNT; (2) ESTABLISHING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF PROMISSORY NOTES IN THE ORDINARY COURSE OF BUSINESS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KENNETH J. PINGREE, JR. AND ELSA RAIGOSA IN SUPPORTTHEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 10, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Sandford Frey      Sfrey@cmkllp.com
- Queenie K Ng      queenie.k.ng@usdoj.gov
- United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:** On (date) December 10, 2013, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Thomas B. Donovan
United States Bankruptcy Court
255 E. Temple Street
Los Angeles, CA  90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 10, 2013 | Kelli Nielsen | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

## 2. SERVED BY UNITED STATES MAIL

Bay Area Financial Corporation
12400 Wilshire Boulevard
Suite 350
Los Angeles, CA 90025

Alfred or Winifred Wilkes
The Wilkes Family Trust
1212 Linda Flora Dr
Los Angeles, CA 90049

Arthur and Grace Beavens TTEES
612 15th St
Manhattan Beach, CA 90266

Arthur DeFever Trustee
c/o Donald S DeFever
114 Del Carlo Ct
Los Gatos, CA 95032

Barbara Bidwell Hillman TTEE
13545 Lucca Dr
Pacific Palisades, CA 90272

Dice 1992 Trust
215 Avocado Pl
Camarillo, CA 93010

J Mace Thompson
25 Montowese Dr
Meriden, CT 06450

James Prause Trust
67 Bell Canyon
Trabuco Canyon, CA 92679

Jan O Simis Trust
400 W Ventura Blvd # 100
Camarillo, CA 93010

Juliana Westervelt
5422 Heron Bay
Long Beach, CA 90803

Kravitsky Family Trust
11323 Stevens Ave
Culver City, CA 90230

Larry and Linda Sacks TTEES
4702 Park Encino Ln # 325
Encino, CA 91436

Lyn S Nelson TTEE
PO Box 676227
Rancho Santa Fe, CA 92067

Marcel or Joanne George TTEES
630 Tiger Tail Rd
Los Angeles, CA 90049

Marilyn or Robert Hinds et al
12574 Preston Way
Los Angeles, CA 90066

Pingree Family Trust
9471 Brewer Way
Villa Park, CA 92861

Robert Hillman Jr
371 Elsie St
San Francisco, CA 94110

Stephanie L Dillon as Trustee
Separate Property Trust
PO Box 765
Jamul, CA 91935

Todd Fiorentino Trustee
24006 Canvasback Cr
Laguna Niguel, CA 92677

Wayne H Madsen
625 Killdale Ct
Simi Valley, CA 93065

William H Malkmus Rev Trust
1337 San Luis Ave
Oakland, CA 94602

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.